

# Missouri Court of Appeals
## Southern District

### In Division

| | |
|---|---|
| STATE OF MISSOURI, ) | |
| ) | |
| Plaintiff-Respondent, ) | |
| ) | |
| vs. ) | No. SD37611 |
| ) | |
| NAPOLEON EMANUEL, ) | **Filed: February 1, 2024** |
| ) | |
| Defendant-Appellant. ) | |

APPEAL FROM THE CIRCUIT COURT OF MISSISSIPPI COUNTY

The Honorable S. Rob Barker, Judge

**<u>REVERSED AND REMANDED</u>**

Napoleon Emanuel appeals a Mississippi County Circuit Court ("trial court")
judgment convicting him of the class A felony of unlawful distribution of a controlled
substance in a protected location, specifically within 2,000 feet of a public elementary
school in violation of section 579.030, following a jury trial.[1]  Emanuel claims four
points of trial court error on appeal:  (1) the trial court erred in overruling his motion for
judgment of acquittal at the close of all the evidence because there was insufficient
evidence that he committed the alleged drug sale knowing he was within 2,000 feet of a

---

[1] All references to statutes are to RSMo 2016, including any applicable changes effective January
1, 2017, unless otherwise indicated.

public elementary school; (2) the trial court plainly erred by failing to instruct the jury its verdict must be unanimous in accordance with Instruction 402.05, a required jury instruction; (3) the trial court plainly erred by failing to *sua sponte* issue a curative instruction or declare a mistrial after the State's improper personalized statements during closing argument; and (4) the trial court plainly erred by failing to *sua sponte* issue a curative instruction or declare a mistrial after the State's improper future dangerous argument during closing argument.[2]  Finding merit in his instructional claim alleged in Point II, and because this point is dispositive, we do not reach the other allegations of error.  We reverse and remand this case to the trial court for a new trial.

### Factual Background and Procedural History

On March 2, 2018, Sergeant Travis Templemire ("Templemire"), who was assigned to the Southeast Missouri Drug Task Force, was working an undercover narcotics investigation in Charleston, Missouri.  Templemire drove a confidential informant to Family Dollar, a store located in Charleston, to buy methamphetamine from a person who was going to meet the informant there.  The store was around 1,400 feet from Charleston Middle School.  The informant told Templemire they would be purchasing the drugs from "Junebug," who was later identified as Emanuel.  When they pulled into the parking lot, Templemire saw Emanuel.  Emanuel approached the vehicle and handed the informant a clear plastic baggie containing a chunky, crystal substance in exchange for $40.00.  A Missouri State Highway Patrol Crime Laboratory analysis concluded the crystalline substance contained methamphetamine.

---

[2] All references to jury instructions are to Missouri Approved Instructions - Criminal 4th ("MAI-CR 4th") (effective January 1, 2021), unless otherwise indicated.

2

The State tried its case to a jury on April 28, 2022. In every criminal trial, the trial court must read certain patterned jury instructions from MAI-CR 4th to the jury once it is sworn, throughout the trial, and before closing arguments. One such instruction is Instruction 402.05, which instructs the jurors on the selection of a foreperson, how they may weigh the believability and credibility of witness testimony, and explains the requirement that their ultimate verdict must be unanimous.

Before opening statements, the trial court read the following instructions to the jury: Instruction 402.01 regarding Duties of the Judge and Jury and Instruction 402.02 relating to Evidence and Rulings of the Court. The trial court did not discuss Instruction 402.05 at this time. During *voir dire*, neither the State nor Emanuel's trial counsel informed the jury of the unanimous jury requirement contained in Instruction 402.05, and neither party mentioned a unanimity requirement in their opening statements or at any time throughout the trial.

After the State presented its evidence and rested, the trial court held its instruction conference. The trial court stated, "Earlier we talked about Instructions 3, 4, and 5. So I've got 402.03 as No. 3. 402.04 as No. 4. 402.06 as No. 5." Emanuel's trial counsel asked the trial court to read Instructions 425.30, 408.14, and 425.02 to the jury as Instruction Nos. 6, 7, and 8, respectively. After additional discussion off the record, the trial court announced, "[w]e've compiled clean instructions . . . 1 through 8." Neither the State nor Emanuel offered Instruction 402.05 or made an objection to the trial court's failure to read Instruction 402.05 to the jury when the trial court asked if either party had any objections to the jury instructions as read. Emanuel then waived his right to testify,

the jury was called back into the courtroom, and Emanuel rested his case without presenting any evidence.

The trial court subsequently read Instructions 3 through 8 to the jury. At no point during its reading did the trial court recite Instruction 402.05 to the jury. No instruction read to the jury at any time during the trial included a direction to the jurors that their verdict must be unanimous. The parties made their closing arguments, and the case was submitted to the jury. Neither closing argument informed the jury its verdict must be unanimous. The verdict form did not inform the jury of the unanimity requirement, and it only required one signature, that of the jury foreman.

Following deliberations, the jury returned the completed verdict form to the trial court. The trial court read the verdict aloud: "We, the jury, find the defendant, [Emanuel], guilty of distribution of a controlled substance in a protected location, as submitted in Instruction No. 7." Neither the State nor Emanuel requested a poll of the jury regarding its verdict when the trial court asked Emanuel if he would like the jury to be polled. The trial court did not poll the jury *sua sponte*.

**Standard of Review**

Emanuel requests plain error review because he concedes he did not object to the jury instructions, as read, at trial, and he raises this claim of error for the first time on appeal. Rule 28.02(f) states that failure to use a proper instruction shall constitute error, "provided that objection has been timely made pursuant to Rule 28.03."[3] Rule 28.03 requires counsel to "make specific objections to instructions or verdict forms considered erroneous" and warns, "No party may assign as error the giving or failure to give

_____

[3] All rule references are to Missouri Court Rules (2023).

4

instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict[.]" Rule 28.03. However, Rule 30.20 affords us the opportunity to consider plain errors affecting substantial rights for unpreserved claims, including unpreserved instructional errors. *State v. Robinson*, 484 S.W.3d 862, 869 (Mo. App. E.D. 2016) (holding Rule 30.20 allows for plain error review of unpreserved claims of instructional error notwithstanding Rule 28.03).

Our standard of review for plain error is set forth in *State v. Brandolese*:

> Generally, this Court does not review unpreserved claims of error. *State v. Cella*, 32 S.W.3d 114, 117 (Mo. banc 2000). Rule 30.20 alters the general rule by giving appellate courts discretion to review "plain errors affecting substantial rights may be considered in the discretion of the court . . . when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. "Plain error review is discretionary, and this Court will not review a claim for plain error unless the claimed error 'facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted.'" *State v. Clay*, 533 S.W.3d 710, 714 (Mo. banc 2017) (quoting *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995), and Rule 30.20). "The plain language of Rule 30.20 demonstrates that not every allegation of plain error is entitled to review." *State v. Nathan*, 404 S.W.3d 253, 269 (Mo. banc 2013). "The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." *State v. Jones*, 427 S.W.3d 191, 195 (Mo. banc 2014). Unless manifest injustice or a miscarriage of justice is shown, an appellate court should "decline to review for plain error under Rule 30.20." *Id.* at 196. Finally, "the defendant bears the burden of demonstrating manifest injustice entitling him to" plain error review. *State v. Oates*, 540 S.W.3d 858, 863 (Mo. banc 2018) (quoting *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006)).

601 S.W.3d 519, 525-26 (Mo. banc 2020). We also note:

> A plain-error claim "places a much greater burden on a defendant than an assertion of prejudicial error." *State v. Ralston*, 400 S.W.3d 511, 520 (Mo. App. 2013). A defendant must show not only that the trial court committed evident, obvious, and clear error, but also the existence of manifest injustice or a miscarriage of justice. *State v. Mueller*, 568 S.W.3d

5

62, 75 (Mo. App. 2019). *To prove plain instructional error, the defendant "must demonstrate the trial court so misdirected or failed to instruct the jury that the error affected the jury's verdict."* [*State v.*] *Celis-Garcia*, 344 S.W.3d [150,] 154 [(Mo. banc 2011)] (citations and internal quotation marks omitted). *Even clear and obvious instructional error rarely works a manifest injustice or miscarriage of justice demanding plain-error reversal.* *State v. Parsons*, 339 S.W.3d 543, 549 (Mo. App. 2011). The outcome of plain-error review depends heavily on the facts and circumstances of each case. *Ralston*, 400 S.W.3d at 520.

*State v. Stuckley*, 573 S.W.3d 766, 768 (Mo. App. S.D. 2019) (emphasis added).

## Analysis

The constitution of this state provides "[t]hat the right of trial by jury as heretofore enjoyed shall remain inviolate[.]" Mo. Const. art. I, § 22(a). This constitutional provision guarantees a fundamental right that an accused shall enjoy a trial by twelve people that unanimously concur in the guilt of the defendant before he or she can be legally convicted.

*State v. Goucher*, 111 S.W.3d 915, 917 (Mo. App. S.D. 2003); *see also* ***Ramos v. Louisiana***, 140 S.Ct. 1390, 1397 (2020) ("There can be no question either that the Sixth Amendment's unanimity requirement applies to state and federal criminal trials equally."). To secure this constitutional safeguard, the mandatory Instruction 402.05 states:

When you retire to your jury room, you will first select one of your number to act as your foreperson and to preside over your deliberations.

You will then discuss the case with your fellow jurors. Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

In deciding what the facts are, you must decide what testimony you believe and what testimony you do not believe. You may believe all, any part, or none of a witness's testimony. You must decide for yourselves whether to believe the testimony or any witness.

You must take great care in determining the believability of a witness and the weight to be given to testimony of the witness; you may take into consideration the witness's manner while testifying; the ability and opportunity of the witness to observe and remember any matter about which testimony is given; any interest, bias, prejudice, incentive, or motive the witness may have; the reasonableness of the witness's testimony considered

6

in the light of all of the evidence in the case; any benefit that the witness was promised, received, or expected; and any other matter that has a tendency in reason to prove or disprove the truthfulness of testimony of the witness.

Your verdict in this case should be based on unbiased reflection after fairly considering the evidence and the views of other jurors whose backgrounds and perspectives may be different from yours.

*Your verdict, whether guilty or not guilty, must be agreed to by each juror. Although the verdict must be unanimous, the verdict should be signed by your foreperson alone.*

When you have concluded your deliberations, you will complete the applicable form(s) *to which you unanimously agree* and return (it) (them) with all unused forms and the written instructions of the court.

(Emphasis added). The second note from the Notes on Use for this instruction states, "This instruction *must be read to the jury in every case*. It should be read immediately before the last instruction, MAI-CR 4th 402.06." (Emphasis added.) Missouri Approved Instructions "contemplate religious observance both as to the forms themselves and the instructions contained in their Notes on Use." **State v. Billingsley**, 534 S.W.2d 484, 485 (Mo. App. K.C.D. 1975). "Failure to comply with the Missouri Approved Instructions-Criminal and the applicable Notes on Use is presumed prejudicial." **State v. Thomas**, 75 S.W.3d 788, 791 (Mo. App. E.D. 2002) (citing **State v. Roe**, 6 S.W.3d 411, 415 (Mo. App. E.D. 1999)).

In Point II, Emanuel claims the trial court plainly erred by failing to instruct the jury per MAI-CR 4th 402.05, in violation of his right to a unanimous jury verdict, because the "failure to give this instruction means that the jury's verdict might not have been unanimous, in violation of the unanimity requirement, resulting in a manifest injustice." Emanuel, relying on *Goucher* which addressed facts almost identical to his appeal, argues he has demonstrated plain error requiring a new trial because the trial court's failure to instruct on unanimity is equivalent to structural error. *See* 111 S.W.3d at 920. *Goucher* held a defendant did not need to show manifest injustice to establish

plain error from a trial court's failure to give a unanimity instruction because such an error is analogous to "structural errors" under federal precedent and "reversible error *per se*." *Id.* at 920.

The State does not dispute the trial court did not give Instruction 402.05 to the jury, and no other instruction otherwise informed the jurors that their verdict must be unanimous. It instead argues Emanuel must follow the plain error review framework from *Brandolese*, 601 S.W.3d at 526, and under this framework Emanuel has not shown he suffered the manifest injustice or miscarriage of justice required for plain error review. *See State v. Martin*, 661 S.W.3d 337, 340 (Mo. App. S.D. 2023) ("Even if the circuit court erred, without some facial showing that a manifest injustice or miscarriage of justice resulted, plain error review should be denied."); *see also Thomas*, 75 S.W.3d at 791 ("For instructional error to rise to the level of plain error, the trial court must have so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict."). We agree with the State's argument in part. To the extent *Goucher* held a trial "court's failure to instruct the jury on unanimity is plain error affecting substantial rights" without undergoing the plain error analysis set forth in *Brandolese* and required by Rule 30.20, it is no longer controlling precedent. *See* 111 S.W.3d at 920.[4]

---

[4] *Goucher* held a defendant may meet his or her "burden of showing plain error by simply demonstrating that the trial court failed to give a mandatory instruction that possibly affected substantial rights." 111 S.W.3d at 919. This holding does not comport with the standard of review from *Brandolese* and its progeny, is overruled, and is not to be followed. *See State v. Onyejiaka*, 671 S.W.3d 796, 798 (Mo. banc 2023); *see also State v. Hilbert*, 663 S.W.3d 462, 465 (Mo. banc 2023); *Peterson v. State*, 658 S.W.3d 512, 516-17 (Mo. banc 2022); *State v. Minor*, 648 S.W.3d 721, 731 (Mo. banc 2022); *Brandolese*, 601 S.W.3d at 525-26.

"Rule 30.20 is the exclusive means by which an appellant can seek review of *any* unpreserved claim of error[,] and said claim – no matter if it is statutory, *constitutional, structural*, or of some other origin – is evaluated by [the Supreme Court of Missouri's] plain error framework without exception." ***Brandolese***, 601 S.W.3d at 530 (second emphasis added); *see also **Int. of J.C.S.***, 658 S.W.3d 260, 265 (Mo. App. S.D. 2023) (stating an argument that a trial court committed a "structural error entitling [the appellant] to plain error review and automatic reversal . . . is contrary to controlling precedent in [***Brandolese***]"). Emanuel's claims of structural and constitutional plain error must therefore proceed under the plain error framework applicable to all claims of plain error, "without exception." ***Brandolese***, 601 S.W.3d 530. He accordingly bears the burden of facially establishing manifest injustice or miscarriage of justice. ***Id.*** at 526. To prevail on a claim of plain error for an instructional error, Emanuel must demonstrate the trial court's error, in failing to give the mandatory Instruction 402.05, "so misdirected or failed to instruct the jury that the error affected the jury's verdict." ***State v. Hayes***, 678 S.W.3d 111, 113 (Mo. App. S.D. 2023) (quoting ***Celis-Garcia***, 344 S.W.3d at 154) (internal quotation marks omitted). We determine he met that burden here.

"In every criminal case, MAI-CR4th 402.05 *must* be read to the jury." ***State v. Johnson***, 599 S.W.3d 222, 226 (Mo. App. W.D. 2020). There is no dispute the trial court failed to give Instruction 402.05 to the jury, and so the trial court's error is evident, obvious, and clear. ***State v. Deck***, 303 S.W.3d 527, 545 (Mo. banc 2010) ("Error results when a trial court fails to give a mandatory instruction."); *see also **Robinson***, 484 S.W.3d at 869 ("The trial court's failure to read preliminary instructions meets the first prong of plain error review.").

"The [next] question is whether manifest injustice or a miscarriage of justice occurred" as a result of the trial court's error. *State v. Smith*, 154 S.W.3d 461, 466 (Mo. App. W.D. 2005). Several courts have concluded evident error in the form of a failure to give instructions does not rise to the level of manifest injustice or miscarriage of justice when the jury is otherwise informed of the directives in the omitted instruction. *See*, *e.g.*, *Deck*, 303 S.W.3d at 547 ("[T]he failure to read a mandatory instruction did not result in plain error if the jury was otherwise conveyed the information."); *see also State v. Oliver*, 655 S.W.3d 407, 416 (Mo. App. E.D. 2022) ("[B]ecause the language given to the jury in Instruction No. 1 was substantively identical to the language omitted from Instruction No. 12, the jury was instructed as to the substance of the language omitted from Instruction No. 12[.]"); *State v. Williams*, 329 S.W.3d 700, 705 (Mo. App. S.D. 2010) ("These circumstances demonstrate that the jury clearly understood its responsibility and was not confused by the trial court's failure to give MAI–CR 3d 304.12."). We cannot make that same conclusion here because the jury was not informed of the directives in Instruction 402.05 in any other manner.

The record presented by Emanuel is devoid of any evidence the trial court informed the jury of its obligation to reach a unanimous verdict. Neither the State nor Emanuel's trial counsel discussed unanimity during *voir dire*, opening statements, or closing statements; and the trial court did not poll the jury after the verdict. At no point in the trial did anyone, in written form or otherwise, instruct the jury with language similar to Instruction 402.05. There is therefore no instruction for us to presume the jury heard, understood, or followed. The jury's verdict form also gives no indication the jury understood its guilty verdict must be unanimous. Only the jury foreperson signed the

10

verdict form, and its phrase, "We, the jury, find the defendant [Emanuel] guilty[,]" provides no certainty "the jury" was in unanimous agreement.

We are also unable to conclude there was no plain error on the basis Emanuel contributed to the trial court's error, as argued by the State. The State, relying on *State v. Bolden*, 371 S.W.3d 802 (Mo. banc 2012), claims Emanuel had "numerous opportunities" to correct the error regarding Instruction 402.05, and the failure to not correct the trial court amounts to self-invited error. *Bolden* held "a defendant may not take advantage of self-invited error or error of his own making[,]" and declined plain error review when a defendant jointly proffered a defense instruction with the State. *Id.* at 806 (quoting *State v. Mayes*, 63 S.W.3d 615, 632 n.6 (Mo. banc 2001)). Unlike the defendant in *Bolden*, Emanuel offered no instruction, jointly or otherwise, contrary to Instruction 402.05, nor was he under any obligation to offer Instruction 402.05. Rather, the State "has the burden to prove every element of the crime charged" to seek a conviction, *State v. Pliemling*, 645 S.W.3d 86, 91 (Mo. App. S.D. 2022), and it therefore bears the burden of obtaining a unanimous jury verdict. *See Ramos*, 140 S.Ct. at 1397 ("[I]f the Sixth Amendment's right to a jury trial requires a unanimous verdict to support a conviction in federal court, it requires no less in state court."); *see also Celis-Garcia*, 344 S.W.3d at 157 (detailing how the State may craft charges or verdict directors to protect a defendant's right to a unanimous verdict).

The record reveals the trial court failed to give the mandatory Instruction 402.05, and nothing else otherwise informed the jury that unanimity was required. It was possible that the jury was able to reach a verdict by a mere majority of jurors in violation of Emanuel's constitutional guarantees of a unanimous jury verdict. This potential result

demonstrates the trial court's failure to instruct on unanimity affected the jury's verdict to the point of manifest injustice or miscarriage of justice. *See Robinson*, 484 S.W.3d at 874-75 (holding a trial court's failure to give three mandatory instructions resulted in manifest injustice because the jury lacked "sufficient guidance"); *see also State v. January*, 176 S.W.3d 187, 199 (Mo. App. W.D. 2005) (holding the failure to instruct on a claim-of-right defense "alone is sufficient for us to find manifest injustice and a miscarriage of justice"); *Smith*, 154 S.W.3d at 470 ("[W]e find that the omissions by the trial court in instructing the jury on note-taking, as mandated by Note on Use 4 for MAI–CR 3d 302.01, were significant . . . such that the court committed plain error."). Instructional error is more likely to require reversal under plain error review when a given instruction excuses the State of its burden of proof. *State v. DeRoy*, 623 S.W.3d 778, 789 (Mo. App. E.D. 2021) ("In determining whether the misdirection likely affected the jury's verdict, an appellate court will be more inclined to reverse in cases where the erroneous instruction . . . excused the State from its burden of proof on a contested element of the crime.") (quoting *State v. Darden*, 263 S.W.3d 760, 762 (Mo. App. W.D. 2008)). We are similarly more inclined to reverse the trial court's judgment for plain error here because, by failing to give Instruction 402.05 to the jury, the trial court excused the State of its full burden to prove guilt beyond a reasonable doubt to _all_ jurors. *See State v. Doolittle*, 896 S.W.2d 27, 30 (Mo. banc 1995) (finding plain error from an instruction that failed to include a necessary element for the charged offense and thus "totally excused the State from its burden of proof as to a contested element of a crime"). Emanuel's showing that the trial court failed to protect his constitutional right to a unanimous jury verdict itself "satisfies the . . . burden to prove the manifest injustice or

miscarriage of justice required by plain-error review." *See **State v. Cox***, 659 S.W.3d 651, 653-54 (Mo. App. S.D. 2023) (reviewing a claim a trial court plainly erred by failing to ensure a defendant's waiver of counsel was knowing and voluntary).

The trial court committed plain error because the failure to give the mandatory Instruction 402.05 "so misdirected or failed to instruct the jury [such] that the error affected the jury's verdict[,]" in that the jury could have reached its verdict by a less than unanimous vote. ***Stuckley***, 573 S.W.3d at 768 (quoting ***Celis-Garcia***, 344 S.W.3d at 154). This resulted in a manifest injustice or miscarriage of justice, requiring reversal.

Point II is granted. The judgment is reversed and remanded for a new trial.


JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS